THE PEOPLE OF THE STATE OF NEW YORK ex rel.
JAMES B. PECK, Respondent, v. FRANCIS M. ·CONLEY
AND Others, Trustees of the First Society of the Methodist
Episcopal Church of the Town of Cohocton, Appellants.

*Jurisdiction of the court to restrain the trustees of a religious corporation from divert-*
*ing its property from the church or denomination to which the corporation is*
*attached — 1875, chap. 79, and 1876, chap. 176 — when the trustees will be compelled*
*by a* mandamus *to open the meeting-house to a minister regularly appointed to that*
*place.*

The appellants are the trustees of the First Society of the Methodist Episcopal
Church of the town of Cohocton, organized in 1829 under the general law
of 1813. In the year 1831 the local society received a conveyance of a parcel of
land, upon which a meeting-house has since been erected, in which the grantees
were mentioned and described as " Paul C. Cook (and four others), trustees of
the First Methodist Episcopal Society of the town of Cohocton, and their suc-
cessors in office," but which contained no conditions or other reference to any
religious organization. By the custom, regulations and discipline of the Metho-
dist Episcopal Church, the bishop presiding at an annual conference possesses
full authority, and is charged with the duty, to make the appointment of
preachers for the several local districts within his conference.

The relator, a minister of the gospel in good standing in the Methodist Episcopal
Church, having been appointed by the bishop presiding at the annual confer-
ence held for the year 1885, as the preacher to be located in the Cohocton
district, and to occupy for religious purposes the meeting-house owned by the
corporation of which the appellants are the trustees, applied to them to be
received as the minister of the society and to be allowed to open and use the
meeting-house for the purpose of conducting religious exercises. The trustees
having refused to receive the relator or to open the meeting-house, he applied
for and obtained a *mandamus* compelling them so to do.

*Held,* that since the passage of chapter 79 of 1875, and chapter 176 of 1876, the
courts have, by force of the provisions contained in the said acts, jurisdiction
to supervise the action of the trustees of religious corporations and to require
them to use and manage the property of the corporation *according to the rules*
and usages of the church or denomination to which the corporation belongs,
and to restrain them by appropriate orders and decrees in actions or proceedings
properly instituted for that purpose by interested parties from diverting the
property held by them as trustees, or from using the revenues which come into
their hands except for the support and maintenance of the church or denom-
ination to which they are attached.

*Isham* v. *Fullager* (14 Abb. N. C., 363); *First Reformed Presbyterian Church* v.
*Bowden* (Id., 356); *Isham* v. *The Trustees of the First Presbyterian Church*
*of Dunkirk* (63 How., 495), followed.

That it was the duty of the trustees to receive the relator as minister, and to open the meeting-house to him for the purpose of conducting divine worship therein, in conformity to the tenets and discipline of the religious denomination to which he and the corporation was attached.

That in refusing to open the meeting-house the trustees violated a plain duty, and that the writ of *mandamus* was a proper remedy to put the relator in possession of the pulpit to which he was entitled.

APPEAL from an order of the Monroe Special Term, granting a peremptory writ of *mandamus* requiring the appellants to receive the relator as the minister of the society of which they are the trustees, and to open the meeting-house, of which they have charge, to the said relator, for the purposes of conducting religious exercises therein, in conformity to the faith, tenets and discipline of the Methodist Episcopal Church, and to do certain other things, specifically mentioned, of less importance, and referred to in the opinion.

*T. M. Connelly*, for the appellants.

*McMaster & Parkhurst*, for the respondent.

BARKER, J.:

The relator is a minister of the gospel, in good standing, of the religious denomination and organization known as the Methodist Episcopal Church. The appellants are the trustees of the First Society of the Methodist Episcopal Church of the town of Cohocton, organized in the year 1829, under the general law of 1813 (chap. 60), permitting the creation of religious corporations. This corporation is located within the territorial limits of the Genesee Conference of the said denomination, over which Bishop Hurst presided at the annual conference held in the year 1885. In the year 1831 the local society received a conveyance of a parcel of land, upon which a meeting-house has since been erected, and the grantees therein are mentioned and described as "Paul C. Cook and four others, trustees of the First Methodist Episcopal Society of the town of Cohocton, and their successors in office, of the second part." No conditions are inserted in this conveyance upon which the title vested in the trustees is made to depend; nor is any reference made therein as to the religious organization to which the said corporation belongs, other than is found in the clause describing the official character of the trustees.

By the custom, regulations and discipline of the Methodist Episco-
pal Church, the bishop presiding at an annual conference possesses
full authority, and is charged with the duty to make the appoint-
ments of preachers for the several local districts within his con-
ference. At the conference held in 1885, Bishop Hurst, in due
form, appointed the relator as the preacher to be located in the
Cohocton district, and to occupy for religious purposes the meet-
ing-house owned by the corporation of which the appellants are the
trustees. They refuse to receive the relator in his capacity as
preacher, and refuse to open the meeting-house, that he may con-
duct religious services therein, in accordance with the rights,
ceremonies and discipline of the Methodist Episcopal Church, to
which the local society and corporators were attached. The trus-
tees were supported in their action in this respect by a majority of
the congregation and communicants belonging to the local society.
The trustees justify their action, morally and as members of the
religious society, upon the ground that they were dissatisfied, as a
body, with the action of the conference and the bishop in appointing
the relator as the preacher of their society, and specify as the chief
reason of their opposition that the relator is entirely incompetent to
perform the duties of pastor, and without talent to edify or instruct
the people.

As a legal justification, and for the purpose of defeating the
relator's application, they claim that the corporation of which they
are the trustees is a civil one, independent of all ecclesiastical judi-
catories, and that the civil courts are without jurisdiction to guide
or control their action in the management of the temporalities of
the church, over which they have the same control that the trus-
tees or directors of business corporations have and possess, by the
general laws of the State. In this contention they would have been
supported by the construction which the courts have placed upon
the general act of 1813, prior to its amendment by chapter 79 of
the Laws of 1875 and chapter 176 of the Laws of 1876.
(*Robertson* v. *Bullions*, 11 N. Y., 243; *Petty* v. *Tooker*, 21 id.,
267.)

In those cases it was held that the members of the society or
corporation form the corporate body, such members being the cor-
poration, and the trustees the mere officers of the corporation; that

the body or entity thus brought into existence is a civil corporation, with such functions and powers as the statute confers upon it and its officers, and that in no sense was it an ecclesiastical corporation; that it was wholly independent, in its existence and in the control and management of its affairs, of all religious judicatories; that it is a creature of the State, and subject to such control as its own laws may impose; that none of the provisions of the act of 1813 were intended to disturb, interfere with or regulate the actions and powers of the numerous voluntary religious organizations existing in this State, and that such bodies were recognized and considered as entirely spiritual associations, distinct and separate from the body politic.

Since those decisions were made, giving a construction to the original act, supplemental provisions have been enacted which provide that the rectors, wardens and vestrymen, or the trustees, consistory or sessions of any church, congregation or religious society, incorporated under any of the laws of this State, shall administer the temporalities thereof, and hold and apply the estate and property belonging thereto, and the revenues of the same, for the benefit of such corporation, according to the rules and usages of the church or denomination to which said corporation shall belong; and it shall not be lawful to divert the estate, property or revenue to any purpose except the support and maintenance of any church or religious or benevolent institution or object connected with the church or denomination to which such corporation shall belong. (Laws of 1876, chap. 176, § 1.)

The legislature had previously enacted (Laws of 1875, chap. 79) that the jurisdiction of courts of equity was extended over religious corporations, so far as it may be necessary to enforce the provisions of that act, which provided that the trustees of any church, congregation or religious society, incorporated under section 3 of the act of 1813, shall administer the temporalities thereof, and hold and apply the estate and property belonging thereto, and the revenues of the same, for the benefit of such corporation, according to the discipline, rules and usages of the denomination to which the church members of the corporation belong; nor shall it be lawful for the trustees to divert such estate, property or revenues to any other purpose, except towards the support and maintenance of any

religious, benevolent or other institution connected with such church, congregation or religious society.

This court has, by its previous decisions, placed a construction upon these amendments or supplementary provisions to the original act, and held that the courts, by force of their provisions, have jurisdiction to supervise the action of the trustees of religious corporations and to require them to use and manage the property of the corporation according to the rules and usages of the church or denomination to which the corporation belonged; and when they attempt to divert the property, of which they have the title as trustees, or to use the revenues which may come to their hands, except for the support and maintenance of the church or denomination to which it is attached, to restrain their action by appropriate orders and decrees in actions or proceedings properly instituted for that purpose by interested parties.

In *Isham* v. *Fullager* (14 Abb. N. C., 363), it was held at Special Term that the trustees could be properly restrained, under the amendatory clauses, from opening the church building to the ministration of a minister who had been deposed from his office by the action of an ecclesiastical judicatory to which he and the society belonged. This case was affirmed at General Term, on the opinion of the justice who presided at the Special Term. The same views were again expressed by this court in the case of *The First Reformed Presbyterian Church* v. *Bowden* (14 Abb. N. C., 356). The same questions were up for consideration and the same conclusions reached in *Isham* v. *The Trustees of the First Presbyterian Church of Dunkirk* (63 How., 495).

In the examination of the case at bar we have re-examined the questions involved in the discussion and are confirmed in our views as previously expressed, and, upon the authority of the cases cited, we hold that it was the duty of the trustees to receive the relator as the minister assigned to the district of the First Methodist Episcopal Church of Cohocton, and to open the meeting-house to him for the purpose of conducting divine worship therein in conformity to the tenets and discipline of the religious denomination to which he belongs and to which the corporation is attached. In refusing to open the meeting-house the trustees violated a plain duty, and the writ of *mandamus* is a proper remedy to put the

relator in possession of the pulpit to which he is entitled. (*People v. Steele*, 2 Barb., 397.)

As to the personal property described in the writ, the trustees deny, that the corporation has title to the same, and state, in their affidavits; that they have no control over the same, naming the persons in whose possession the same is. The relator failed to establish, in the face of these denials, that the trustees held the property for the use of the resident minister and, so far as they are required to deliver the same to the custody of the relator, and for his use, the writ. should be amended by striking out that requirement.

As no point was made by the appellants that the record book mentioned in the writ was not intended to be used by the minister, for the purpose of keeping the records of the church, we allow the writ to stand in that particular, although we find no canon, in the book of discipline handed up to us, giving him charge of the records of the society or corporation.

The order and the writ, as amended, are affirmed, without costs of this appeal to either party.

Smith, P. J., and Bradley, J., concurred; Haight, J., not sitting.

Order and writ modified as indicated in the opinion, and as modified affirmed, without costs of this appeal to either party.